In re **ROBERTS FARMS INCORPORATED,** Debtor.

**ROBERTS FARMS INCORPORATED, Appellant,**

v.

**Glenn BULTMAN; John Kelly, Appellees.**

No. 91–16372.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1992.

Decided Nov. 24, 1992.

Stephen H. Dye, Bronson, Bronson, & McKinnon, San Francisco, Cal., for appellant.

Leonard K. Welsh, Bakersfield, Cal., for appellees.

Before: GOODWIN, FARRIS, and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

In the Chapter 11 proceeding of Roberts Farms Incorporated, the bankruptcy court allowed, over the objection of Roberts Farms, the claim of Bultman and Kelly for attorneys fees in the amount of $144,-898.14. The Bankruptcy Appellate Panel affirmed. This appeal followed. We have jurisdiction under 28 U.S.C. § 158(d), and we affirm.

## BACKGROUND

In 1984, Roberts Farms Incorporated ("Roberts Farms") hired the law firm of O'Melveny & Meyers ("O'Melveny") to defend against a multi-million dollar lawsuit, the CIN litigation. O'Melveny subsequently associated Bultman & Kelly ("B & K") as local counsel. On April 24, 1985, Hollis Roberts, president of Roberts Farms, and John Kelly of B & K met to establish a direct employment relationship. At that meeting, Mr. Kelly orally agreed to continue defending Roberts Farms in the CIN litigation. In return, Mr. Roberts orally agreed to pay B & K directly and timely for services rendered.

Pursuant to this agreement, B & K provided legal assistance to Roberts Farms in the CIN litigation from April 1985 to January 1987. B & K billed Roberts Farms for these services by mailing it monthly statements.[1] Roberts Farms timely paid B & K's statements for services rendered in the months of April, May, and June 1985. Roberts Farms failed to pay all statements for services rendered from July 1985 through January 1987.

On December 28, 1987, Roberts Farms filed a voluntary Chapter 11 petition pursuant to 11 U.S.C. § 1121(a). On February 9, 1988, B & K filed its original proof of claim on a printed bankruptcy form. The proof of claim form states that Roberts Farms was indebted to B & K in the sum of $144,898.14 for legal services. Item four of the form asks the claimant whether its claim is based on a writing. B & K responded "No" to this question. Item five of the form asks the claimant whether its claim is based on an open account, and if so, what date the account became due. B & K also responded "No" to this question.

B & K attached to the February 1988 proof of claim form seven detailed billing statements addressed to Roberts Farms. These statements represented charges for legal services rendered in the CIN litigation from July 1985 through January 1987. Each statement itemizes by date the specific services rendered, fees charged for such services, and costs incurred.

On October 18, 1989, twenty months after B & K filed its proof of claim, and after Roberts Farms's plan of reorganization was confirmed, Roberts Farms objected to B & K's claim on the ground that it was barred by "applicable statutes of limitation ... [and/or] the doctrine of laches."[2]

On December 20, 1989, the date of the hearing on Roberts Farms's objection to B & K's claim, the bankruptcy court allowed B & K to file an amended proof of claim. B & K again used the printed bankruptcy form. On the amended proof of claim form, B & K did not respond to item four's inquiry regarding a writing. B & K responded to item five by typing the date "January 9, 1987" in the blank space thereby indicating that its claim was based on an open account that became due in early January 1987.

B & K again attached the detailed billing statements for services rendered from July 1985 through January 1987. Additionally, B & K attached copies of documents entitled "Statements of Services" ("time sheets") and "Visible Ledger Cards" ("ledger cards") for the same period. The

---

1. Roberts Farms claims that it did not receive statements from B & K after August 1985. Although the evidence on this question of fact was in conflict, the bankruptcy court implicitly found that B & K's statements dated September 1985 through January 1987 were mailed to Roberts Farms. *See* discussion below on laches.

2. Cal.Code Civ.Proc. § 339 prescribes a two-year statute of limitation on claims based on an oral contract. Although Roberts Farms's Objection To Claim did not explicitly state that § 339 applied to B & K's claim, the parties concede that this is the applicable statute of limitation provision that purportedly bars B & K's claim.

time sheets contain handwritten entries by date describing the kind of legal services performed regarding the CIN litigation and the amount of time spent performing the services. These handwritten descriptions were typed on the statements addressed to Roberts Farms that were attached to the original proof of claim. The ledger cards are in traditional ledger format with date, debit, credit, and balance columns. The ledger cards contain monthly entries of the total legal fees billed for that period and credits for payments received from Roberts Farms. They also contain handwritten entries of costs incurred in connection with the CIN litigation. Both the legal fees billed and the costs incurred appear on the typed statements addressed to Roberts Farms.

After amending its proof of claim, B & K argued that its claim was not time-barred because California's statute of limitation on claims based on open book accounts is four years pursuant to Cal.Code Civ.Proc. § 337. Roberts Farms objected to the amended proof of claim arguing that it would be prejudiced by the amendment. Roberts Farms also objected to the admission of the ledger cards because it was not made aware of this record keeping system until the day of the hearing. The bankruptcy court allowed the parties to file additional written briefs addressing B & K's amendment.

On September 28, 1990, the bankruptcy court overruled Roberts Farms's objections and allowed B & K's claim as a general unsecured claim. The bankruptcy court found that B & K's amended proof of claim was a permissible clarification of the law firm's original proof of claim; that Roberts Farms was not prejudiced by the amendment; that the records maintained by B & K constituted an open book account within the meaning of Cal.Code Civ.Proc. § 337a; and that B & K was not guilty of laches.

Roberts Farms argued before the Bankruptcy Appellate Panel ("BAP") that the bankruptcy court erred (1) in allowing B & K to amend its original proof of claim; (2) in ruling that B & K's claim was based on an open book account; and (3) in ruling

that B & K was not guilty of laches. Roberts Farms renews these objections before this court. We discuss each objection in turn and affirm the decisions of the bankruptcy court and the BAP.

## DISCUSSION

### Standard of Review

■ We review the BAP's decision and the bankruptcy court's conclusions of law de novo. See In re the Two "S" Corp., 875 F.2d 240, 242 (9th Cir.1989); In re Contractors Equipment Supply Co., 861 F.2d 241, 243 (9th Cir.1988). We review the bankruptcy court's findings of fact for clear error. See Bankr.R. 8013; In re Dewalt, 961 F.2d 848, 850 (9th Cir.1992). The decision to allow an amendment to a timely filed proof of claim is within the sound discretion of the bankruptcy court, and we therefore review it for an abuse of discretion. In re Grivas, 123 B.R. 876, 878 (Bankr.S.D.Cal.1991).

### Amended Proof of Claim

Roberts Farms contends the bankruptcy court abused its discretion in allowing B & K to amend its proof of claim to show that it was based on an open book account because such amendment prejudiced Roberts Farms. We disagree.

■ We have a long established liberal policy that permits amendments to a proof of claim. See Bankr.R. 7015; Fed.R.Civ.P. 15; In re Franciscan Vineyards, Inc., 597 F.2d 181, 182 (1979), cert. denied, 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980). The crucial inquiry is whether the opposing party would be unduly prejudiced by the amendment. In re Wilson, 96 B.R. 257, 263 (9th Cir.BAP1988); United States v. Hougham, 364 U.S. 310, 316, 81 S.Ct. 13, 18, 5 L.Ed.2d 8 (1960).

To determine whether Roberts Farms was prejudiced by B & K's amendment, the BAP properly relied on factors considered in In re City of Capitals, Inc., 55 B.R. 634, 637 (Bankr.D.Md.1985). The Ninth Circuit BAP adopted these factors in In re Wilson, 96 B.R. at 262, where the court stated "in determining prejudicial effect [we] look to

such elements as bad faith or unreasonable delay in filing the amendment, impact on other claimants, reliance by the debtor or other creditors, and change of the debtor's position." *Id.* Applying these factors, we agree with the bankruptcy court and the BAP that Roberts Farms was not prejudiced by the amendment.

■ Roberts Farms argues that B & K's amendment was a bad faith attempt to avoid the statute of limitation. *See Tillson v. Peters,* 41 Cal.App.2d 671, 107 P.2d 434 (1940). The bankruptcy court expressly found that the amended claim "in no way asserted a different claim but was rather a clarification of the earlier claim." This finding is not clearly erroneous. Although B & K incorrectly completed the original proof of claim form, the attached detailed statements indicated that the claim was in fact based on an open book account. Both the original and the amended proofs of claim were based on the detailed billing statements that were mailed to Roberts Farms. The statements, in turn, were prepared from the ledger cards and time sheets maintained by B & K. Thus, B & K's amendment was not a bad faith attempt to avoid the statute of limitation. Rather, the amendment was an attempt to preserve B & K's substantive claim.

■ Roberts Farms also contends that B & K unreasonably delayed in amending its proof of claim, resulting in prejudice to Roberts Farms at the hearing on its objections. More specifically, Roberts Farms argues that it had already completed discovery and legal preparation for the hearing. This argument is without merit. Roberts Farms itself was guilty of extreme delay by not objecting to B & K's original proof of claim for almost two years. Furthermore, the parties agreed at the hearing that additional discovery would be unnecessary, and that the issues raised by B & K's

amendment could be adequately addressed in written briefs.

In addition, the bankruptcy court's decision to permit the amendment did not impact other claimants. Roberts Farms's reorganization plan was confirmed over a month before Roberts Farms objected to B & K's claim. The reorganization plan called for fixed percentage payments on allowed claims, including B & K's claim. The amended proof of claim did not alter the amount of B & K's claim, and therefore it had no effect on recovery by other claimants.

■ Finally, Roberts Farms argues that it made business decisions in connection with its disclosure statement and its reorganization plan based on the original proof of claim. Roberts Farms's bald assertion that it made decisions in the reliance on the original claim and that it was harmed thereby is insufficient evidence of reliance and resulting prejudice.

### Open Book Account

■ Roberts Farms contends that the bankruptcy court erred in determining that the records maintained by B & K constitute an open book account. We disagree.

An open book account is defined in Cal. Code Civ.Proc. § 337a as

a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor of fiduciary, and is ... on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner.

B & K's records satisfy this definition.[3] The ledger cards, time sheets, and billing

---

**3.** Although the Cal.Civ.Code Proc. § 337a does not require express intent to be bound by a book account, Roberts Farms argues that both the creditor and debtor must expressly intend to be bound by the book account before a book account is created. We reject this argument.

California courts only require that the parties expressly intend to be bound by an open book account when there is an express contract that sets the time and amount of payment. *See Warda v. Schmidt,* 146 Cal.App.2d 234, 303 P.2d 762 (1956); *see also Gardner v. Rutherford,* 57 Cal.App.2d 874, 136 P.2d 48 (1943); *Lee v. De-*

statements are detailed permanent records that reflect the ongoing relationship between Roberts Farms and B & K.[4]

 In short, Roberts Farms contracted with B & K for legal services in connection with the CIN litigation. No set amount was determined to be due each month; B & K simply billed Roberts Farms on an hourly basis as work was performed. The entire period of services constituted one account, and the four-year statute of limitation began to run on January 9, 1987, the date of the last entry in the book account. *Egan v. Bishop*, 8 Cal.App.2d 119, 47 P.2d 500 (attorney's action in 1932 for payment of fees for services rendered in 1923 not time-barred because all entries regarded as single open book account and the statute of limitation does not begin to run until the date of the last entry). Because B & K filed its proof of claim on February 9, 1988, a date well within the four-year limitation period, its claim is not time-barred.

### Laches

Finally, Roberts Farms contends that the bankruptcy court erred in finding that B & K was not guilty of laches. Roberts Farms argues that it was unduly prejudiced by allegedly delayed receipt of statements for services performed between August 1985 and January 1987. We affirm the bankruptcy court on this issue as well.

 Roberts Farms bases its laches defense on its contention that B & K stopped sending statements to Roberts Farms after August 1985. B & K, however, submitted an affidavit of Betty Garner to refute Roberts Farms's claim that it did not receive B & K's statements after August 1985. Garner's affidavit states that she mailed monthly statements to Roberts Farms after August 1985. In light of this evidence, we cannot say the bankruptcy court clearly erred in believing that B & K mailed the statements to Roberts Farms in a timely fashion. *See In re Contractors Equipment Supply Co.*, 861 F.2d at 243 (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (a finding of fact is not clearly erroneous unless the reviewing court is firmly convinced that a mistake was committed)). B & K therefore was not guilty of laches.

### CONCLUSION

The decisions of the bankruptcy court and the Bankruptcy Appellate Panel are AFFIRMED.[5]

*Forest*, 22 Cal.App.2d 351, 71 P.2d 285 (1937). When such an express contract exists, courts require that the parties expressly intend to be bound because accruing debts under an express contract are not normally considered the subject of an open book account.

In this case, Roberts Farms's express intent to be bound by B & K's records was not required to create an open book account. The oral contract between Roberts Farms and B & K did not fix a time for payment or a monthly amount payable. The amount owing and the time for payment depended on what services B & K performed and on what dates these services were rendered, and B & K's records were the only source available to determine what and when Roberts Farms owed payment. B & K's record keeping therefore was not the mere incidental recording of debts accruing from an entirely independent source. *Cf. H. Russell Taylor's Fire Prevention Serv., Inc. v. Coca Cola Bottling Corp.*, 99 Cal.App.3d 711, 160 Cal.Rptr. 411 (1979) (plaintiff's recording of demurrage

charges was merely incidental to the parties's express contract setting payment for services, and therefore did not create an open book account).

4. The fact that detailed entries shown on the time sheets were not transferred to the ledger cards does not change the result. *See Egan v. Bishop*, 8 Cal.App.2d 119, 47 P.2d 500, 502 (1935) (attorney's docket of court cases and journal of office service charges were sufficient to constitute a single open book account).

5. On this appeal, Roberts Farms also challenges the bankruptcy court's finding that Mr. Roberts's promise to pay the amount owing in return for B & K's promise to forbear collection efforts constituted new consideration supporting a second oral contract. Because we affirm the bankruptcy court's finding that B & K's claim was based on an open book account, we do not address the issue of the existence of a subsequent oral contract.